**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stormwater Plans LLC, | No. CV-23-01184-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Cincinnati Insurance Company, et al., | |
| Defendants. | |

Defendant Arrow Indian Contractors agreed to be the general contractor on a project for the United States Federal Highway Administration. Plaintiff Stormwater Plans, LLC, ("SWP") executed a subcontract with Arrow to perform work on that project. SWP performed the work, but Arrow has not paid SWP. After Arrow and SWP had some informal discussions, SWP filed this suit seeking payment. Arrow then filed a motion to stay, arguing the subcontract prevents SWP from pursuing litigation now or in the future. Arrow has not carried its burden of establishing a stay is appropriate.

## BACKGROUND

In 2021, Arrow contracted with the United States Federal Highway Administration ("FHA") as the general contractor for a road project. Arrow obtained the required Miller Act Payment bond from Cincinnati Insurance Company.[1] Arrow then executed a

---

[1] "The Miller Act requires a general contractor on a federal construction project to furnish '[a] payment bond . . . for the protection of all persons supplying labor and material in the prosecution of the work provided for in [the] contract.'" *Mai Steel Serv., Inc. v. Blake Const. Co.*, 981 F.2d 414, 416 (9th Cir. 1992) (quoting 40 U.S.C. § 270a(a)(2)). Under the Miller Act, a subcontractor may sue both a general contractor and its surety. *See, e.g., U.S. for Use & Benefit of Owens v. Olympic Marine Servs., Inc.*, 827 F. Supp. 1232, 1234

subcontract with SWP for SWP to perform excavation and grading work on the project.

The subcontract between Arrow and SWP contains a section titled "Claims and Disputes" establishing how the parties would resolve any disagreements. That section requires that if there is a dispute between Arrow and SWP, and that dispute is connected to an ongoing dispute between Arrow and FHA, any litigation between Arrow and SWP must be stayed until resolution of the Arrow/FHA dispute. In addition, if there is a dispute between SWP and Arrow that is not connected to an ongoing Arrow/FHA dispute, SWP and Arrow must first "endeavor to settle the dispute through direct discussion." If that discussion fails, Arrow can demand mediation. And if mediation fails, Arrow and SWP must pursue arbitration or litigation. As discussed later, the subcontract identifies arbitration and litigation as mutually exclusive options, but it does not state which option applies.

After executing the subcontract, SWP allegedly "performed and completed all [required] work." (Doc. 1 at 2). In early October 2022, "SWP sent Arrow a demand for payment of $742,093." (Doc. 28 at 2). SWP also demanded payment of $66,435 "for work under the subcontract . . . that is unrelated to Arrow receiving payment from the FHA." (Doc. 28 at 2). Arrow did not pay either amount. SWP then sent Cincinnati Insurance Co. ("CIC") a "notice of claim" stating Arrow had refused to pay and SWP expected payment from CIC. Like Arrow, CIC refused to pay.

On March 30, 2023, SWP sent Arrow a proposed resolution that would require Arrow make "installment payments" of the owed amounts. (Doc. 28 at 44). Arrow did not respond. On April 19, 2023, SWP sent a follow-up communication stating it had not "heard anything back from [Arrow] regarding [SWP's] proposed settlement and payment [offer]." The April communication noted "[u]nfortunately, the time to file suit [sic] is coming up" and SWP would "be filing suit and start the collection process." (Doc. 28 at

---

(E.D. Va. 1993) (noting subcontractor may sue surety and general contractor). Arrow and Cincinnati Insurance Company are represented by the same counsel, and both seek a stay. For purposes of this Order, the Court will not differentiate between the two defendants.

- 2 -

1  47). Arrow did not respond. On June 26, 2023, SWP filed this suit.

2  Arrow was served but, instead of answering, filed a motion to stay. That motion
3  argues the FHA has failed to pay Arrow for all the work performed on the project,
4  including the work performed by SWP. Arrow states it "is still petitioning the [FHA] for
5  payment" and has a meeting with FHA personnel on an undisclosed date "to discuss and
6  potentially overcome obstacles to payment." (Doc. 24 at 3). Arrow's motion argues the
7  ongoing discussions between Arrow and FHA trigger the provision of the subcontract
8  that requires a stay of any proceedings to resolve disputes between Arrow and SWP.
9  Arrow also points to the subcontract's provision requiring mediation and argues this case
10 cannot proceed because mediation has not yet occurred. Finally, Arrow argues SWP
11 cannot pursue its claims in litigation because the subcontract requires all disputes be
12 resolved via arbitration.

## ANALYSIS

The parties disagree on the appropriate framework for evaluating Arrow's motion to stay. Neither party's framework appears correct. Arrow argues a stay is appropriate because SWP's claims are not yet "ripe." According to Arrow, there are certain events that must occur before any litigation may proceed. (Doc. 24 at 3). Thus, Arrow asks for a stay until those events occur. However, when claims are not "ripe," the usual course is to dismiss the claims, not issue a stay. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) ("If the claim before us is not ripe, we must dismiss.").

As for SWP, it invokes the standard applicable for a party seeking to stay a judgment pending appeal. *Nken v. Holder*, 556 U.S. 418, 421 (2009). That standard is "similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). But Arrow is not seeking a stay pending appeal nor is Arrow seeking an injunction to prevent other ongoing proceedings. Thus, SWP's proposed standard appears inapplicable.

Because neither party has identified the standard that should be applied to the

motion to stay, the Court must determine the appropriate standard on its own. There are two likely possibilities. First, Arrow's assertion that a stay should be granted pending resolution of other proceedings may be a request for a stay under the Court's inherent power. Second, Arrow's argument that SWP must arbitrate its claims appears to be a request for a stay under the Federal Arbitration Act ("FAA"). Arrow makes two arguments for a stay that fall under the Court's inherent power and one argument under the FAA.

## I.     "Dispute Resolution Proceeding"

Courts have the inherent power to stay cases. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This inherent power is often the basis for a stay "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). When exercising this power, a court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

The relevant portion of the subcontract between Arrow and SWP states "resolution of disputes between [SWP] and [Arrow] involving in whole or in part disputes between [Arrow] and [FHA] shall be stayed pending conclusion of any dispute resolution proceeding between [Arrow] and [FHA]." (Doc. 1-3 at 9). In other words, if Arrow and the FHA are in a "dispute resolution proceeding" involving issues relevant to Arrow paying SWP, that "dispute resolution proceeding" must be resolved before SWP can seek relief against Arrow. The subcontract does not include a definition of "dispute resolution proceeding."[2]

---

[2] The subcontract contains a choice of law provision requiring application of Arizona law. The parties agree that provision applies. (Doc. 28 at 21). Under Arizona law, "[t]he

- 4 -

SWP argues the term "dispute resolution proceeding" refers only to formal proceedings, in particular litigation. Arrow counters the term refers to more than litigation "because the ordinary meaning" of the term "includes mediation, arbitration, and any other contractually mandated dispute resolution proceeding agreed to by the parties to a contract." (Doc. 29 at 5). Arrow argues it is "petitioning [FHA] for payment" and Arrow has scheduled a meeting with FHA personnel.[3] (Doc. 24 at 3). Arrow believes those actions mean there is a pending "dispute resolution proceeding" under the subcontract.

Arrow's proposed definition of "dispute resolution proceeding" as including merely discussions and meetings between Arrow and FHA personnel is not convincing. Arizona courts have interpreted "proceeding" when used in a statute as referring to events much more formal than mere discussions and meetings. *See City of Sedona v. Devol*, 993 P.2d 1142, 1145 (Ariz. Ct. App. 1999) (concluding "proceeding" refers to "an 'action' or a 'suit'" and not "a single procedural step within a suit"). That interpretation does not foreclose a different interpretation in the context of a contract action. However, Arrow has not established the parties' use of "dispute resolution proceeding" was intended to have a sufficiently broad definition to cover the present situation. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (noting burden is on party seeking stay).

Assuming "dispute resolution proceeding" should be interpreted to cover more than litigation, Arrow has not explained the ongoing discussions and meetings between

---

purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ariz. Ct. App. 2009). To accomplish that, a court must "first consider the plain meaning of the words in the context of the contract as a whole." *Id.*

[3] In its reply, Arrow argues for the first time that it is in the middle of a more formal dispute proceeding with FHA. Arrow explains the road project is subject to the "Federal Acquisition Regulation," and that regulation establishes a mandatory "dispute resolution process." That process requires a dissatisfied entity first submit "a Request for Equitable Adjustment and a formal Claim" to the FHA. (Doc. 29 at 6). Arrow states it has filed a Request for Equitable Adjustment with the FHA that has not yet been resolved. (Doc. 24 at 4). Because it was raised for the first time in the reply, the Court need not address this argument. However, even on the merits, Arrow has not sufficiently explained the procedures and level of formality involved in a "Request for Equitable Adjustment" such that the Court might deem the submission of a such a request a "dispute resolution proceeding" under the subcontract.

Arrow and FHA in sufficient detail to determine they meet the bare minimum of being a "dispute resolution proceeding." In particular, Arrow has not set forth whether there are formal limitations on the discussions or meetings such as deadlines for reaching agreement. Nor has Arrow identified the disputes Arrow and FHA hope to resolve through those discussions or meetings such that it is clear they will directly impact all the sums SWP seeks.[4] Overall, Arrow simply has not provided sufficient information to conclude there is anything close to a pending "dispute resolution proceeding" between Arrow and FHA.

## II.     Mediation

Arrow's second argument for a stay under the Court's inherent power is based on the subcontract's reference to mediation. The subcontract states any dispute between Arrow and SWP "shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association at the sole discretion of Contractor." And "[i]f demanded by [Arrow], engaging in mediation is a condition precedent to any form of binding dispute resolution." (Doc. 1-3 at 9). According to Arrow, no mediation has occurred and, therefore, SWP cannot pursue its claims in litigation. (Doc. 24 at 4). Arrow's argument is perplexing.

SWP concedes the subcontract contains a mediation provision, but SWP points out the provision can only be invoked by Arrow. The subcontract states mediation will occur "at the sole discretion of" Arrow. SWP argues this provision means it is not entitled to demand mediation and Arrow does not disagree. It would be inappropriate to bar SWP from pursuing litigation before mediation when SWP has no ability to demand mediation.

Focusing on its own right to demand mediation, Arrow argues a stay is merited because it may demand mediation at some point in the future. According to Arrow, the subcontract "does not lay out a timeline limiting" when mediation can be initiated. (Doc. 29 at 7). Arrow apparently plans to invoke mediation at some unidentified point and,

---

[4] As noted earlier, SWP has demanded payment of $66,435 "for work under the subcontract . . . that is unrelated to Arrow receiving payment from the FHA." (Doc. 28 at 2). If that is accurate, it appears Arrow's discussions with FHA have nothing to do with at least a portion of the recovery SWP seeks.

therefore, the Court should stay this case until Arrow chooses to do so. Arrow's interpretation that there are no time limits on when it may demand mediation is implausible. However, the Court need not determine when Arrow must demand mediation because it is undisputed Arrow has not done so as of now.

Arrow has not demanded mediation and the possibility Arrow may, at some undisclosed time, demand mediation is not sufficient to merit a stay of this case.

### III.     Arbitration

In its motion Arrow argues a stay is appropriate because the subcontract contains an arbitration provision. That is not entirely accurate. The subcontract states that if both direct discussions and mediation fail, Arrow and SWP agree to resolve their dispute either through arbitration or litigation. (Doc. 1-3 at 9-10). The subcontract intended for Arrow and SWP to check a box next to one of these options, indicating which method was mandatory. However, neither box was checked. Based on the failure to select either option, Arrow argues the Court should assume the parties meant to select arbitration and, therefore, litigation will never be possible.

The Federal Arbitration Act ("FAA") provides that when a suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court must "stay the trial of the action until such arbitration has been" completed. 9 U.S.C. § 3. If the parties have a valid arbitration clause, there is "no place for the exercise of discretion" and the parties are required "to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, arbitration "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). And there is no presumption in favor of arbitration when the dispute is "whether an agreement to arbitrate has been made." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

Arrow argues the Court should require arbitration because the subcontract listed arbitration as the first of the two options. But Arrow does not cite any authority that a

- 7 -

Court should conclude the parties intended to arbitrate their disputes based on the order in which the arbitration option was listed. Arrow also argues "arbitration is favored when contemplated by a contract." (Doc. 24 at 4). But Arrow's argument assumes the subcontract does, in fact, require arbitration. When the question is whether the subcontract requires arbitration, there is no general preference requiring the parties arbitrate their disputes. At this time, Arrow has not established the parties intended to select the arbitration provision by not checking the box for arbitration or litigation. Therefore, Arrow is not entitled to a stay under the FAA.

### IV.     Conclusion

Arrow has not established it is entitled to a stay. However, the facts make it appear whether to grant a stay is an issue that will be raised again in the future. For example, if Arrow and FHA are unable to resolve their disagreements and Arrow pursues more formal avenues of resolving those disagreements, a stay may be merited. In that event, Arrow may renew its motion to stay. But should Arrow do so, it must provide authority establishing a federal court is required to impose a stay based on an underlying contractual provision such as the one at issue in this case. In other words, Arrow must set forth that a federal court lacks discretion when there is a contract provision of this type. Should Arrow renew its motion, it must also establish that its disagreements with FHA directly impact payment of SWP and that Arrow does not owe any funds to SWP that do not depend on the disagreements between Arrow/FHA.

Accordingly,

**IT IS ORDERED** the Motion to Stay (Doc. 24) is **DENIED**. Defendants shall respond to the complaint within ten days of this Order.

Dated this 6th day of October, 2023.

_____
Honorable Roslyn O. Silver
Senior United States District Judge